UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

WALDEMAR BRUZDA, JACEK JOZEFKOWICZ, AND THOMAS GARBOWSKI;

       Plaintiffs,

v.

SONIC AUTOMOTIVE D/B/A MURRAY BMW OF DENVER,

       Defendant.

## COMPLAINT

Plaintiffs, Waldemar Bruzda, Jacek Jozefkowicz, and Thomas Garbowski, by and through their attorneys, submit this Complaint against Sonic Automotive d/b/a Murray BMW of Denver ("Sonic" or "Defendant") state and allege as follows:

## PRELIMINARY STATEMENT

1. This is an employment discrimination suit brought by three former employees of Sonic who were harassed on the basis of their national origin and age. In retaliation for reporting the same, Defendant adversely altered the terms and conditions of Plaintiffs' employment and subjected Plaintiffs to a hostile work environment that ultimately resulted in a loss of income to all three Plaintiffs in violation of federal law. Plaintiffs accordingly bring claims against Defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

## JURISDICTION AND VENUE

2. Plaintiffs incorporate by reference the above paragraphs as though set forth separately herein.

3. Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and the Colorado Anti-Discrimination Act, as amended, Colo. Rev. Stat. § 24-34-402, *et seq.* ("CADA"). Plaintiffs additionally raise other employment-related claims under state common law.

4. This Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(3), (4). The Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as Plaintiffs' Title VII claims.

5. Jurisdiction is also proper under 28 U.S.C. §§ 1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in the District of Colorado.

7. Plaintiffs each filed a Charge of Discrimination Number with the Equal Employment Opportunity Commission and were issued a Notice of Right to Sue on March 21, 2016.

8. Per Plaintiffs' Agreements to Arbitrate, this action was timely filed with the American Arbitration Association ("AAA").

9. Defendants failed to pay their portion of the Arbitration and rendered the Agreements to Arbitrate unenforceable. *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015), *cert. denied,* 136 S. Ct. 373, 193 L. Ed. 2d 292 (2015) (holding that the repeated refusal to pay the fees precludes enforcement of an arbitration agreement). There, the Court stated:

> Our holding is consistent with decisions of other courts that have determined a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement. *See, e.g., Brown v.*

*Dillard's, Inc.,* 430 F.3d 1004, 1011 (9th Cir.2005) (explaining the defendant "breached the arbitration agreement by refusing to participate in properly initiated arbitration proceedings" and that the "breach was tantamount to a repudiation of the arbitration agreement"); *Sink,* 352 F.3d at 1201 ("[F]ailure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration."); *Garcia v. Mason Contract Prods., LLC,* No. 08–23103–CIV, 2010 WL 3259922, at *3 (S.D.Fla. Aug. 18, 2010) (unpublished) (holding "[b]y failing to timely pay its share of the arbitration fee, Defendant materially breached its obligations, thereby 'scuttling' [its] opportunity" to insist on arbitration). *Id.*

10. AAA requested payment from the parties on July 25, 2016 with a deadline of August 3, 2016. *See* Exhibit A, p. 1 – 3.

11. On August 5, 2016, AAA acknowledged receipt of the Plaintiffs' filing fee but noted that the filing fee by the Defendant still remained unpaid. *See* Exhibit A, p. 6. AAA extended the time for Defendant to pay the filing fee to August 19, 2016. *See* Exhibit A, p. 6 -7. On August 5, 2016, undersigned counsel also emailed counsel for Defendant (as well as his assistant) and asked them to complete payment. *See* Exhibit A, p. 4.

12. On August 11, 2016, undersigned counsel reached out to counsel for Defendant and inquired about Defendant's filing fee. *See* Exhibit A, p. 8. Undersigned counsel was assured via email that the filing fee would be paid. *See* Exhibit A, p. 8 - 9.

13. On August 14, 2016, undersigned counsel again followed up with counsel for Defendant and inquired about payment of the filing fee. *See* Exhibit A, p. 9. The assistant to Defendant's counsel responded on August 16, 2016 with assurances that the payment would be received. *See* Exhibit A, p. 11.

14. On August 24, 2016, AAA sent another letter requesting payment and extended Defendant's deadline again to September 2, 2016. *See* Exhibit A, p. 13 – 14.

15. On September 6, 2016, AAA sent another letter requesting payment and extended Defendant's deadline to September 9, 2016. *See* Exhibit A, p. 16.

16. On September 15, 2016, AAA sent another letter requesting payment, and stated that "the employer has not paid the $1,500, which represents its share of the filing fee." *See* Exhibit A, p. 20 – 21. AAA extended Defendant's deadline again to September 22, 2016. *See* Exhibit A, p. 20 - 21.

17. On September 23, 2016, AAA issued a notice that the employer failed to submit payment in accordance with the Employment Arbitration Rules. *See* Exhibit A, p. 23 – 24. AAA noted that it was not only closing its file on this matter but also declined "to administer any future employment matter involving respondent."

18. Due to Employer's repeated failure to pay, any agreement to arbitrate is void and this Court has jurisdiction.

## FACTUAL ALLEGATIONS

19. Plaintiffs incorporate by reference the above paragraphs.

20. Waldemar Bruzda, Jacek Jozefkowicz, and Thomas Garbowski, are all over 60 years of age, automotive sales professionals, and of Polish descent.

21. Mr. Bruzda and Mr. Jozefkowicz worked for Sonic for six years and seven years, respectively, until they were terminated for pretextual reasons. Mr. Garbowski attempted to continue to work for Sonic despite experiencing discriminatory harassment that inhibited his ability to make car sales and significantly cut his compensation. Since that time, Mr. Garbowski's access to leads was so greatly reduced that he lost income while even being "employed" and was therefore constructively terminated.

22.     The discriminatory practices began shortly after Steve Paulet became Finance Manager in January 2014.  Despite their excellent sales records, Mr. Paulet believed that the three lacked communication skills because of their Polish accents, and he forbade them from answering incoming calls, which cost them leads and compensation.

23.     Mr. Paulet gave leads and special treatment to other salesmen while he withheld leads from the three.  At times, five or more leads were distributed among two non-Polish salesmen, leaving the three with none.

24.     He forbade the three from speaking Polish in the workplace, even on their breaks.

25.     Mr. Paulet regularly referred to the three as "Polacks" and "KGB Agents."  Mr. Paulet asked "Is this how you spies work?" and "Why do you foreigners hate Americans?"

26.     In January 2015, the Company promoted Chris Neira to a management position, and he became Mr. Paulet's ally in demeaning the three.  Their lack of respect created an "us and them" environment that alienated the three from the Company's non-Polish employees.

27.     Moreover, Mr. Paulet and Mr. Neira threatened that if the three went to Human Resources with complaints, they would be terminated, it would "go against them," and they would "get no reference."

28.     Without warning, Mr. Paulet moved Mr. Bruzda's desk from the front position he had earned through six years of service and placed him behind a screen where he could not see traffic on the lot.  Mr. Bruzda's prime workspace was taken from him to prevent Mr. Bruzda from connecting with potential leads coming in from the lot.

29.     Mr. Paulet also found it amusing to misspell Waldemar Bruzda's name on the sales whiteboard so it would contain the word "dick."

30. Mr. Paulet demeaned Mr. Jozefowicz by nicknaming him "grumpy old man." He broadcast to other salesmen that Mr. Jozefowicz could not embrace change, and consistently spoke to him in a degrading manner.

31. Even after Mr. Paulet was terminated for allegedly forging customer signatures and Mr. Neira was terminated for sexual harassment allegations, the environment they had created persisted. For months Mr. Paulet and Mr. Neira had been reporting to management that the three were poor employees and making clear to the other salesmen that they should not respect or cooperate with the three. When new management took over, the substandard treatment continued.

32. Plaintiffs reported the discrimination and harassment to Defendant's Human Resources Department. The only action Defendant took to "remedy" the situation was to make the three gentlemen sign Arbitration Agreements, robbing them of their right to a jury trial.

33. Ultimately, Mr. Bruzda and Mr. Jozefowicz were terminated on the same day for pretextual reasons. Mr. Bruzda was terminated for allegedly violating a Colorado licensing law while selling cars for Defendant; however, the Colorado Department of Revenue Auto Industry Division has no requirement that a salesman hold a license to sell cars. Mr. Jozefowicz was terminated for allegedly not following protocol for credit checks. He was following the existing procedure of keeping files locked in his office area. He received no warning or notice of a policy change – just a termination.

34. Mr. Garbowski returned from vacation to learn that Mr. Bruzda and Mr. Jozefowicz had been terminated, and was informed by HR that the Company was conducting a search to find a replacement for him as well.

35. Other Sonic employees joked that Garbowski's career had been temporarily saved by his being "out of sight, out of mind." Mr. Garbowski's income was drastically reduced as a result of the disparate allocation of sales leads.

36. When Mr. Garbowski did make a sale, management divided compensation for the deal inequitably, going so far as to give a portion of the proceeds to salesmen who were not even present when the sale was made. Finally, the harassment of Mr. Garbowski continued and became so severe and pervasive that his ability to earn a salary was impossible.

## FIRST CLAIM FOR RELIEF
### (Discrimination and Harassment Based on National Origin in Violation of Title VII)

37. Plaintiffs incorporate by reference the above paragraphs.

38. Plaintiffs are "employees" as that term is defined at 42 U.S.C. § 2000e(f).

39. Defendant is an "employer" as that term is defined at 42 U.S.C. § 2000e(b).

40. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") prohibits discrimination based on national origin in employment.

41. As shown above, Defendant engaged in unlawful discrimination under Title VII based on Plaintiffs' national origin.

42. Furthermore, Defendant's illegal actions against Plaintiffs, including Defendant's harassment of Plaintiffs, were targeted at Plaintiffs because of their national origin, resulting in adverse impacts to the terms and conditions of Plaintiffs' employment and further subjecting Plaintiffs to harassment and a hostile work environment.

43. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Plaintiffs' position would find Plaintiffs' work environment to be hostile or abusive.

44. At the time the above-described conduct occurred, Plaintiffs work environment was hostile or abusive.

45. Defendant knew or should have known of Defendant's conduct and failed to take prompt, remedial action to stop same.

46. Defendant violated 42 U.S.C. § 2000e-2(a) and discriminated against Plaintiffs by not only subjecting them to severe or pervasive harassment so as to alter the conditions and terms of Plaintiffs' employment, but also: failing to act and condoning or tolerating such harassment, subjecting Plaintiffs to less favorable terms and conditions of employment by imposing heightened and/or disproportionate discipline on Plaintiffs, and ultimately terminating and/or constructively terminating Plaintiffs' employment.

47. Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law, thereby necessitating the imposition of exemplary damages.

48. As a result of Defendant's conduct, Plaintiffs have suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and are entitled to general and special damages, and economic damages including front and back pay. Plaintiffs are also entitled to and seek attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k).

## SECOND CLAIM FOR RELIEF

**(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)**

49. Plaintiffs incorporate by reference the above paragraphs.

50. Title VII, 42 U.S.C. § 2000e-3(a), states in relevant part that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual, . . . because he has

opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."

51. Plaintiffs engaged in activity protected by Title VII on multiple occasions. Specifically, Plaintiffs opposed Defendant's unlawful and discriminatory practices under Title VII by submitting verbal and written complaints to Defendant.

52. Plaintiffs' opposition and complaints regarding Defendant's illegal practices were protected activities within the meaning of 42 U.S.C. § 2000e, *et seq.*

53. Defendant unlawfully retaliated against Plaintiffs in the terms and conditions of their employment and subjected Plaintiffs to further harassment because they engaged in the above-described activities. For example, Defendant, among other things, failed to follow its own policies regarding discipline and subjected Plaintiffs to altered terms of conditions of employment when Defendant's investigation of Plaintiffs' repeated complaints resulted in Defendant concluding that Plaintiffs should be subject to heightened and/or disproportionate discipline for manufactured conduct. Defendant further failed and refused to take corrective action that would prevent Plaintiffs from being subjected to further harassment.

54. A causal connection exists between Plaintiffs' protected activities and Defendant's unlawful retaliation.

55. Due to Defendant's retaliatory conduct and refusal to take any corrective action to prevent Plaintiffs from being subjected to further harassment, Defendant terminated and/or constructively terminated Plaintiffs because they engaged in the above protected activities.

56. In unlawfully discriminating and retaliating against Plaintiffs, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiffs' equal rights under law, thereby necessitating the imposition of exemplary damages.

57. As a result of Defendant's retaliatory conduct, Plaintiffs have suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and Plaintiffs are entitled to general and special damages, and economic damages including front and back pay. Plaintiffs are also entitled to, and seek attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k).

## THIRD CLAIM FOR RELIEF
### (ADEA – Age Discrimination)

58. Plaintiffs hereby incorporate all the paragraphs of this Complaint.

59. Plaintiffs were all over 40 years of age at the time of the events complained of herein and, therefore, are among those covered by the provisions of the Age Discrimination in Employment Act.

60. Defendant discriminated against Plaintiffs in the terms and condition of their employment because of their age including but not limited to denying them leads, using derogatory terms such as "grumpy old man", and the other disparate treatment described above.

61. As a direct result of the Defendant's actions, Plaintiffs suffered adverse employment actions and were submitted to a hostile work environment, both causing damages and losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that judgment be entered in their favor against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to, for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B. Back pay and benefits;

C. Front pay and benefits;

D. Punitive damages;

E. Attorneys' fees and costs of this action as permitted by law;

F. Pre-judgment and post-judgment interest at the highest lawful rate; and

G. Such further relief that is just and proper.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted this 26th day of September, 2016.

By: *s/ Claire E. Munger*
Claire E. Munger
Shelby Woods
HKM Employment Attorneys LLP
703 17th Street, Suite 900
Denver, Colorado 80202
(720) 668 - 8989
cmunger@hkm.com
swoods@hkm.com

*Attorneys for Plaintiffs*

By: *s/* Elwyn F. Schaefer
    Elwyn F. Schaefer
    Elwyn F. Schaefer & Associates, P.C.
    460 South Marion Parkway, Suite 1704
    Denver, CO 80209
    Phone: (303) 722-3063
    Email: estoppel14@msn.com
    *Attorneys for Plaintiffs*

Plaintiffs' Addresses:

Waldemar Bruzda
8209 Cherokee Street
Denver, CO 80221

Jacek Jozefkowicz
10487 E. Dorado Place
Greenwood Village, CO 80111

Thomas Garbowski
7336 E. Princeton Avenue
Denver, CO 80237